**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**CINCINNATI, OHIO**

No.  13-3712

CENTRAL OHIO COAL COMPANY,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR; LARRY T. STERLING

Respondents,

_____

APPEAL FROM THE UNITED STATES
DEPARTMENT OF LABOR, BENEFITS REVIEW BOARD
_____

BRIEF OF PETITIONER,
CENTRAL OHIO COAL COMPANY
_____

William S. Mattingly
West Virginia Bar No. 4699
Jackson Kelly PLLC
P. O. Box 619
Morgantown, WV  26507
(304) 284-4100
*Counsel for Central Ohio Coal Company*

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
### CINCINNATI, OHIO

In the matter of:                                 )
                                                  )
CENTRAL OHIO COAL COMPANY                         )
                                                  )          Sixth Circuit No.:  13-3712
        Petitioner,                       )
                                                  )
v.                                                )
                                                  )
LARRY T. STERLING,                                )
                                                  )
        Respondent,                       )
                                                  )
and                                               )
                                                  )
DIRECTOR, OFFICE OF WORKERS'                      )
COMPENSATION PROGRAMS, UNITED                     )
STATES DEPARTMENT OF LABOR,                       )
                                                  )
        Federal Party-In-Interest.        )
_____           )

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 25, **Central Ohio Coal Company** makes the

following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly-owned corporation? <u>Yes.</u>

      If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

Central Ohio Coal Company is a wholly owned subsidiary of Consol Energy, Inc.

i

2.  Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome?   Yes.

    If the answer is YES, list the identity of such corporation and the nature of the financial interest:

Central Ohio Coal Company is a wholly owned subsidiary of Consol Energy, Inc.


 /s/ William S. Mattingly                    December 18, 2013
 (Signature of Counsel)                      (Date)

# TABLE OF CONTENTS

I.    STATEMENT OF SUBJECT MATTER AND APPELLATE
      JURISDICTION ............................................................................1

II.   STATEMENT OF THE ISSUES ...............................................2

      1.    Mr. Sterling explained he worked in aboveground
            surface mines that were dusty, mainly operating a
            bulldozer removing overburden from coal seams
            and putting the overburden back on.  Does this
            testimony establish his work in aboveground coal
            mining was substantially similar to conditions in
            an underground coal mine? ...................................... 2

      2.    Presented with conflicting evidence over the cause
            of COPD, has the ALJ rationally concluded the
            evidence fails to rebut the presumption of
            pneumoconiosis and disability due to
            pneumoconiosis?...................................................... 2

      3.    Mr. Sterling testified he smoked one to one and
            one-half packages of cigarettes per day, or about
            half of what other treatment records revealed.  Has
            the ALJ explained why the smaller smoking
            history was credited? .............................................. 2

III.  STATEMENT OF THE CASE ....................................................3

      A.    PROCEDURAL HISTORY .............................................. 3

      B.    STATEMENT OF THE FACTS ........................................ 5

IV.   SUMMARY OF THE ARGUMENT ..........................................11

# TABLE OF CONTENTS, Continued.

V.    ARGUMENT ........................................................................13

    A.    STANDARD OF REVIEW ............................................. 13

    B.    DISCUSSION OF THE ISSUES ..................................... 14

        1.    The evidence is insufficient to support the determination that Mr. Sterling's employment as an aboveground dozer operator was substantially similar to that of an underground coal miner......................... 14

        2.    The ALJ's consideration of the medical evidence is not supported by substantial evidence. ............................... 24

            a.    Chest x-ray evidence of clinical pneumoconiosis. .......................................... 24

            b.    Consideration of the physician opinions regarding clinical or legal pneumoconiosis and disability due to pneumoconiosis........................... 30

        3.    The ALJ's determination that Mr. Sterling smoked on average one and one-half packages of cigarettes per day is irrational, arbitrary, and capricious. ...................... 43

VI.   CONCLUSION ............................................................47

VII.  REQUEST FOR ORAL ARGUMENT ......................................48

VIII. ADDENDUM OF STATUTES, RULES, AND REGULATIONS..............49

IX.   ADDENDUM OF UNPUBLISHED CASES .............................................53

X.    CERTIFICATE OF COMPLIANCE

XI.   CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Andersen v. Director, OWCP*,
    455 F.3d 1102 (10th Cir. 2006)............................................................33, 35

*Conley v. Nat'l Mines Corp.*,
    595 F.3d 297 (6th Cir. 2010)..................................................................... 13

*Conn v. White Deer Coal Co.*,
    862 F.2d 591 (6th Cir. 1988).................................................................27, 28

*Crace v. Kentland-Elkhorn Coal Corp.*,
    109 F.3d 1163 (6th Cir. 1997).................................................................... 26

*Director, OWCP v. Greenwich Collieries*,
    512 U.S. 267 (1994).................................................................................. 17

*Director, OWCP v. Midland Coal Co. [Leachman]*,
    855 F.2d 509 (7th Cir. 1988).........................................................16, 17, 18

*Dixie Fuel Co., LLC v. Director, OWCP*,
    700 F.3d 878 (6th Cir. 2012)..................................................................... 29

*Eastover Mining Co. v. Williams*,
    338 F.3d 501 (6th Cir. 2003)..................................................................... 13

*Fife v. Director, OWCP*,
    888 F.2d 365 (6th Cir. 1989)..................................................................... 27

*Freeman United Coal Mining Co. v. Summers*,
    272 F.3d 473 (7th Cir. 2001).................................................................16, 21

*Glen Coal Co. v. Seals*,
    147 F.3d 502 (6th Cir. 1998)..................................................................... 13

## TABLE OF AUTHORITIES, Continued.

*Gunderson v. U.S. Dep't of Labor,*
    601 F.3d 1013 (10th Cir. 2010)............................................................*passim*

*Island Creek Coal Co. v. Calloway,*
    Sixth Cir. No. 09-4598 (6th Cir. Feb. 7, 2012) (unpublished) ................... 41

*Jericol Mining, Inc. v. Napier,*
    301 F.3d 703 (6th Cir. 2002)..................................................................... 13

*Kephart v. Director, OWCP,*
    8 Black Lung Rep. 1-185 (1985)...........................................................16, 17

*Milburn Colliery Co. v. Hicks,*
    138 F.3d 524 (4th Cir. 1998)..................................................................... 33

*National Mining Ass'n. v. Department of Labor,*
    292 F.3d 849 (D.C. Cir. 2002) .............................................................33, 34

*NLRB v. Columbian Enameling & Stamping Co.,*
    306 U.S. 292 (1939).................................................................................. 13

*Piney Mountain Coal Co. v. Mays,*
    176 F.3d 753 (4th Cir. 1999)..................................................................... 13

*Prater v. Blevins Branch Resources, Inc.,*
    BRB Nos. 10-0667-BLA and 10-0668-BLA (Aug. 26, 2011) ................... 16

*Sahara Coal Co. v. Fitts,*
    39 F.3d 781 (7th Cir.1994)........................................................................ 33

*Sterling Smokeless Coal Co. v. Akers,*
    131 F.3d 438 (4th Cir. 1997)..................................................................... 13

*Usery v. Turner Elkhorn Mining Co.,*
    428 U.S. 1 (1976)...................................................................................... 43

**TABLE OF AUTHORITIES, Continued.**

*Woodward v. Director, OWCP,*
  991 F.2d 314 (6th Cir. 1993)......................................................26, 27, 28, 29


**Statutes**

Administrative Procedure Act
  5 U.S.C. § 554(c)(2).................................................................................43
  5 U.S.C. § 557(c)(3)(A) ...............................................................19, 31, 44

Black Lung Benefits Act
  30 U.S.C. § 901 ...................................................................................3, 11
  30 U.S.C. § 901(a) ...................................................................................14
  30 U.S.C. § 921(c)(4)..........................................................................*passim*
  30 U.S.C. § 923(b).....................................................................................29
  30 U.S.C. § 932(a) .................................................................................1, 43
  30 U.S.C. § 932(l).....................................................................................15


Longshore and Harbor Workers' Compensation Act
  33 U.S.C. § 919(d) ...................................................................................43
  33 U.S.C. § 921(c) .....................................................................................1


**Regulations**

Part 718 - Standard for Determining Coal Miner's Total Disability or Death Due to Pneumoconiosis
  20 C.F.R. § 718.201(a)(1) .....................................................................4, 37
  20 C.F.R. § 718.201(a)(2) ...............................................................4, 34, 35
  20 C.F.R. § 718.202(a)...............................................................................29
  20 C.F.R. § 718.202(a)(1)..........................................................................25
  20 C.F.R. § 718.204....................................................................................41
  20 C.F.R. § 718.204(c)..................................................................................4
  20 C.F.R. § 718.305(a) (1980) ..................................................................16

**TABLE OF AUTHORITIES, Continued.**

Part 725 - Claims for Benefits Under Part C of Title IV of the Federal Coal Mine Safety and Health Act, as Amended

    20 C.F.R. § 725.406(a)...................................................................................3

    20 C.F.R. § 725.482(a)...................................................................................1

## <u>Other Authorities</u>

Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended,

    65 Fed. Reg. 79,920 (Dec. 20, 2000) (codified at 20 C.F.R. § Parts 718, 722, 725, 726, and 727)...............................................21, 32, 34

Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits

    78 Fed. Reg. 59,102 (Sept. 25, 2013).....................................................15, 23

# I.    STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This matter involves an appeal from a final order of the United States Department of Labor Benefits Review Board ("Board"). This Court has jurisdiction to review a final order of the Board pursuant to Section 21(c) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), as amended, 33 U.S.C. § 921(c), as incorporated by Section 932(a) of the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 932(a). The Board affirmed the February 15, 2012 decision issued by Administrative Law Judge ("ALJ") Larry S. Merck awarding the application for lifetime disability benefits filed by retired coal miner, Larry T. Sterling. Joint Appendix ("JA") 39.

The jurisdictional time limit for filing an appeal from a final order of the Board is 60 days. *See* 33 U.S.C. § 921(c); 20 C.F.R. § 725.482(a). The Board issued its final order affirming the award of benefits in the miner's claim on February 28, 2013. JA 75. Central Ohio Coal Company filed its Notice of Appeal with the U.S. Court of Appeals for the Fourth Circuit on April 23, 2013. JA 86. A motion for a change of venue was filed on May 24, 2013, moving venue to the U.S. Court of Appeals for the Sixth Circuit. JA 91. The injury alleged in this case, within the meaning of Section 21(c) of the LHWCA, occurred in the state of Ohio. JA 31, 45. This Court has jurisdiction to review the orders of the agency.

## II.    STATEMENT OF THE ISSUES

1.    **Mr. Sterling explained he worked in aboveground surface mines that were dusty, mainly operating a bulldozer removing overburden from coal seams and putting the overburden back on.  Does this testimony establish his work in aboveground coal mining was substantially similar to conditions in an underground coal mine?**

2.    **Presented with conflicting evidence over the cause of COPD, has the ALJ rationally concluded the evidence fails to rebut the presumption of pneumoconiosis and disability due to pneumoconiosis?**

3.    **Mr. Sterling testified he smoked one to one and one-half packages of cigarettes per day, or about half of what other treatment records revealed.  Has the ALJ explained why the smaller smoking history was credited?**

### III.   STATEMENT OF THE CASE

**A.    Procedural history**

This matter concerns the subsequent lifetime disability benefits 2006

application filed by Larry T. Sterling pursuant to the provisions of the BLBA,

30 U.S.C. §901–45, as implemented by Title 20 of the Code of Federal Regulations

Parts 718 and 725.  JA 1.  Mr. Sterling filed two applications for benefits.  The first

claim was abandoned after Mr. Sterling's failure to provide essential evidence to

the agency for the processing of the claim.  Director's Exhibit 1.  This subsequent

claim for benefits was filed on October 11, 2006.  JA 40.  The agency denied

benefits and, aggrieved with this determination, Mr. Sterling requested a hearing

before the Office of Administrative Law Judges.  ALJ Larry S. Merck first

remanded the claim to the District Director to provide Mr. Sterling with a complete

pulmonary evaluation.  *See generally* 20 C.F.R. § 725.406(a) (requirements for

complete pulmonary examination).  The Board vacated that order in an

interlocutory appeal on August 28, 2009 and returned the case to ALJ Merck for

adjudication on the merits.  JA 40.  ALJ Merck convened a hearing on June 7,

2011, at which time the parties made an administrative record consisting of

Mr. Sterling's testimony, 29 Director's Exhibits, 5 Claimant's Exhibits, and

7 Employer's Exhibits.  JA 6-9, 40.  The record remained open after the hearing to

allow the parties to take the deposition of Dr. Phillip T. Diaz and submit a

supplemental report by Dr. David N. Rosenberg. These exhibits were considered by the Administrative Law Judge. JA 64.

ALJ Merck awarded benefits to Mr. Sterling. JA 39. Finding Mr. Sterling worked in conditions substantially similar to that of underground coal mining and presenting with a totally disabling pulmonary disease, he was entitled to the 15-year rebuttable presumption of total disability due to pneumoconiosis afforded miners under the BLBA. *See* 30 U.S.C. § 921(c)(4) ("15-year presumption"). The burden was shifted to the operator, Central Ohio Coal Company ("Central Ohio"), to rebut the presumption. JA 49. ALJ Merck found the evidence could not rebut the existence of either clinical or legal pneumoconiosis[1] or that disability was due to pneumoconiosis,[2] and awarded benefits. JA 71.

Central Ohio sought Board review and, after review, the Board affirmed the award of benefits on February 28, 2013. JA 75. The Board affirmed the ALJ's conclusion Mr. Sterling was eligible for consideration under the 15-year presumption and that Central Ohio failed to rebut the 15-year presumption by disproving either the existence of clinical and legal pneumoconiosis or a causal connection between Mr. Sterling's disability and coal mine employment. *Id.*

---

[1] *See generally* 20 C.F.R. § 718.201(a)(1) and (a)(2) (definitions of clinical and legal pneumoconiosis).

[2] *See generally* 20 C.F.R. § 718.204(c) (definition of disability causation).

Central Ohio filed an initial Notice of Appeal with the U.S. Court of Appeals for the Fourth Circuit.  JA 86.  Subsequently, a motion to change venue was filed, transferring this matter to the U.S. Court of Appeals for the Sixth Circuit inasmuch as Mr. Sterling's coal mine employment occurred in Ohio.  JA 91.

**B.     Statement of the facts**

Larry T. Sterling worked as an aboveground coal miner for Central Ohio Coal Company for at least 23 years.  JA 47.  ALJ Merck found Mr. Sterling's employment was similar to that of an underground coal miner based on a heavy amount of dust to include coal dust.  JA 48.  This finding was based on Mr. Sterling's and Dr. Knight's testimony.  JA 10.

In addition to his work as an aboveground coal miner, which ended when he was laid off in October 1999, Mr. Sterling has been a longtime cigarette smoker. JA 41–2.  He testified at the hearing he began smoking cigarettes on Thanksgiving Day 1966, and ceased the habit about 39 years later, on February 14, 2005, several years after he left mining work.  JA 42.  While the smoking histories related to physicians have varied, the histories have generally ranged between one package of cigarettes per day up to three packages of cigarettes per day for about 40 years. JA 42–3.  ALJ Merck found that the evidence established at least 57 pack-years of cigarette smoking.  JA 43.

The evidence pertaining to the existence of pneumoconiosis consists of radiographic interpretations as well as physician opinions. ALJ Merck described this evidence in his decision between pages 13 and 32. JA 51–70. Both David M. Rosenberg and Herbert A. Grodner evaluated Mr. Sterling at the request of Central Ohio, finding that Mr. Sterling's impairment was out of years of tobacco smoking rather than his work as an aboveground coal miner. JA 290, 235. Contrary opinions were voiced by Drs. Forrestal, Knight, and Diaz. JA 279, 247, 280.

Dr. Forrestal's treatment records reflect repeated diagnoses of asthma, chronic obstructive or chronic obstructive pulmonary disease with acute exacerbation. JA 102–215. The treatment records do not identify coal dust as a cause for the COPD. JA 279. Dr. Forrestal provided an undated one page letter expressing his feelings that occupational dust exposure had contributed to Mr. Sterling's very severe COPD. Dr. Forrestal did not explain his conclusory findings, and in his opinion, coal dust exposure that Mr. Sterling experienced while working in the mines for 31 years was highly contributory to his disability.

Dr. Diaz provided a supplemental statement in 2009. JA 280. He also sat for deposition. JA 350–400. Dr. Diaz explained that he was of the opinion occupational dust exposure contributed significantly to Mr. Sterling's disease. JA 280. Without providing references, he stated substantial scientific evidence demonstrates coal dust exposure can combine with cigarette smoking to cause

6

development of COPD and coal dust can contribute to disease progression.  *Id.*  He believed it noteworthy Mr. Sterling has evidence of coal dust exposure on his chest x-ray with documented linear and nodular opacities.  *Id.*  When deposed, Dr. Diaz clarified his opinion, conceding radiographic evidence of pneumoconiosis was only in the context of emphysema if COPD is part of pneumoconiosis, but he did not see any classical small opacities or linear or nodular markings consistent with pneumoconiosis.  JA 371.  Based on his experience and the degree of severity of COPD and the exposures, he believed he could distinguish between the causation of COPD in a retired miner resultant from cigarette smoking versus smoking and coal mine dust exposure.  JA 372.  Dr. Diaz agreed it was possible that his opinion would be different had he known Mr. Sterling smoked two packages of cigarettes per day.  JA 374.  He did not remember or was not sure if Mr. Sterling wore personal breathing protection, worked in open or closed cabs to operate equipment, or whether the rate of COPD in aboveground miners had been studied by NIOSH. JA 375.

He agreed that severe COPD such as evidenced by Mr. Sterling had not been reported as a result of coal dust alone, was unaware of elevated lung volumes as evidenced by Mr. Sterling in miners without radiographic evidence of pneumoconiosis, was not aware of diffusion abnormalities such as evidenced by Mr. Sterling having been reported to be due to coal dust exposure, and was

7

unaware of $CO_2$ retention in blood gasses such as evidenced by Mr. Sterling having been reported in coal miners. JA 379–80. Because occupational exposure like coal dust can contribute, Dr. Diaz concluded it did. JA 381. He agreed that there was no interstitial disease from coal dust exposure that he could discern. JA 383. While he believed it was difficult to say where the obstruction came from (JA 384), he doubted Mr. Sterling would be totally disabled by pulmonary disease had he never smoked cigarettes. JA 388.

Dr. Grodner evaluated Mr. Sterling on March 29, 2007 and also reviewed the Department of Labor evaluation performed by Dr. Paul Knight on November 9, 2006. JA 235. Dr. Grodner concluded following testing and physical examination with pertinent histories taken from Mr. Sterling that:

> This man has severe chronic obstructive airways disease. There is no evidence of coal workers' pneumoconiosis. The chest x-ray that was taken at this time and interpreted by myself and B-reader Dr. Fox does not indicate evidence of parenchymal abnormalities nor of any pleural changes. He has severe obstructive airways disease which would be a combination of chronic bronchitis and some element of pulmonary emphysema . . . This man does have severe chronic obstructive airways disease. This has been characterized by pulmonary function studies as well as by lack of response to bronchodilator. He requires low-flow oxygen at all times. This is due to his past history of cigarette smoking and genetic factors. He does not have evidence of coal workers' pneumoconiosis and therefore, none of his impairment can be attributed to pneumoconiosis.

JA 238.

8

Dr. Rosenberg reviewed medical evidence, and performed physical examination of Mr. Sterling on May 11, 2011.  JA 290.  Dr. Rosenberg explains Mr. Sterling does not have micronodularity related to his past coal mine dust exposure.  JA 295.  Rather, any linear markings in the mid and lower lung zones related to his chronic obstructive pulmonary disease (COPD).  *Id.*  While there is no question coal mine dust exposure can cause significant airflow obstruction which is disabling, just because a given miner has airflow obstruction does not automatically mean that legal CWP is present.  JA 296Specific to Mr. Sterling, Dr. Rosenberg explained "he has a marked reduction of his $FEV_1$ coupled with a severe reduction of his $FEV_1$/FVC ratio.  This pattern of obstruction is uncharacteristic of the pattern of obstruction observed in relationship to past coal mine dust exposure.  Rather, it is classic for a cigarette-related form of COPD, as is the appearance of his flow-volume curve.  Furthermore, his physical examination findings (decreased breath sounds with marked hyperresonance) and x-ray appearance is indicative of diffuse emphysematous pattern."  JA 298.  Mr. Sterling's emphysematous pattern is classic for smoking-related form of COPD and not that developing in relationship to past coal mine dust exposure.  *Id.*  Mr. Sterling does not have clinical or legal CWP.  While he is disabled from a pulmonary perspective, this relates to the presence of smoking-related COPD and not a coal mine-related disorder.  *Id.*  Based on this, ALJ Merck found the evidence

insufficient to rebut a presumption or total disability due to pneumoconiosis, and

awarded benefits.

## IV.    SUMMARY OF THE ARGUMENT

The benefits claimant, Larry T. Sterling, seeks an agency order requiring his past employer, Central Ohio Coal Company, to pay him lifetime disability benefits claiming to be totally disabled by a chronic dust disease of the lungs caused by cigarette smoking.  He seeks this award pursuant to the application filed with the U.S. Department of Labor adjudicated under the provisions of the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*.  While there is no controversy that Mr. Sterling has disabling lung disease, the controversy exists over whether his disability is due to his many years of heavy cigarette smoking or his work in aboveground coal mining operations.

By virtue of his disability and date of application, Mr. Sterling is eligible for the "15-year presumption."  This presumption affords disabled coal miners who worked for 15 years as underground miners or in "substantially similar conditions to underground mines" the legal presumption that their disability is due to pneumoconiosis and requires a party opposing the claim to show otherwise. *See generally* 30 U.S.C. §921(c)(4).

Here, the agency fact-finder relied on his own personal experience concerning testimony by underground coal miners to find that exposure to dust and dust, grease, and oil on work clothes at the end of the shift, that Mr. Sterling's work in enclosed bulldozer cabs was substantially similar in conditions to those of

11

underground coal miners. This finding neither complies with the requirement that an agency's determination must be based on facts nor can it be judged to be supported by substantial evidence contained in this record. The Administrative Law Judge has evaluated the admittedly conflicting medical evidence as to the existence of clinical or legal pneumoconiosis, yet has failed to resolve the scientific conflict presented to him. Relying on generalities rather than specifically evaluating the expert opinions presented in this case, the ALJ dismisses, for invalid reasons, the expert opinions that explain Mr. Sterling's impairment is due to his years of cigarette smoking rather than work in the coal mines. In fact, even one of Mr. Sterling's principle experts, Dr. Philip T. Diaz, a treating physician from the division of pulmonary and critical care medicine at O.S.U. Lung Center in Columbus, Ohio, doubted Mr. Sterling would be disabled had he never smoked cigarettes. As substantial evidence does not support the ALJ's award of benefits, and as the ALJ has not complied with the requirements of the BLBA or its implementing regulations in evaluating the conflicting evidence, this Court should vacate the award of benefits and return it to the agency fact-finder for consideration of the evidence as presented.

# V.    ARGUMENT

## A.    STANDARD OF REVIEW

This Court reviews decisions of the Benefits Review Board to determine if the Board correctly concluded that substantial evidence supports the ALJ's findings of fact and conclusions of law.  *See Eastover Mining Co. v. Williams*, 338 F.3d 501, 509 n.9 (6th Cir. 2003); *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 708 (6th Cir. 2002); *Glen Coal Co. v. Seals*, 147 F.3d 502, 510 (6th Cir. 1998). "Substantial evidence is more than a mere scintilla, and must do more than create a suspicion of the existence of the fact to be established." *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 756 (4th Cir. 1999) (quoting *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939)).  In determining whether substantial evidence supports the ALJ's factual determination, the Court should address whether all relevant evidence has been analyzed and whether the ALJ has sufficiently explained the rationale used in crediting certain evidence.  *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 439 (4th Cir. 1997).  Finally, the ALJ's and Board's conclusions of law are reviewed *de novo* to determine if they are rational and consistent with the applicable law.  See *Conley v. Nat'l Mines Corp.*, 595 F.3d 297, 301 (6th Cir. 2010); *Eastover Mining*, 338 F.3d at 508.

13

**B.    DISCUSSION OF THE ISSUES**

    **1.    The evidence is insufficient to support the determination that Mr. Sterling's employment as an aboveground dozer operator was substantially similar to that of an underground coal miner.**

    The Black Lung Benefits Act provides benefits to coal miners who are totally disabled due to pneumoconiosis arising out of coal mine employment. *See* 30 U.S.C. § 901(a). Because of the difficulty of proving that a disability results from pneumoconiosis arising out of employment as a miner, the BLBA and the regulations promulgated under it provide that, in certain circumstances, a miner will be presumed to be totally disabled due to pneumoconiosis. One such presumption is found in 30 U.S.C. § 921(c)(4) that provides that a miner who has a totally disabling respiratory or pulmonary impairment is rebuttably presumed to be totally disabled due to pneumoconiosis if he was employed for fifteen or more years as a surface coal miner and the Secretary "determines that conditions of [his] ... employment ... were substantially similar to conditions in an underground mine." [3]

---

[3]  The entirety of § 921(c)(4) provides:

    (4) if  a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a
[Continued…]

14

For claims filed after 2005[4], miners with total disability and at least fifteen years of underground or substantially similar employment are afforded the presumption of total disability due to coal workers' pneumoconiosis.  The Secretary shall not apply the 15-year presumption unless he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine.  30 U.S.C. § 921(c)(4).

ALJ Merck determined that Mr. Sterling's at least 23 years of aboveground coal mine employment was substantially similar to conditions in underground coal

---

totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

[4]  *See* Section 1556 of the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111–114, § 1556, 124 Stat. 119 (2010) (codified at 30 U.S.C.  921(c)(4) and 932(l)) and implemented by regulations promulgated in September 2013, Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits, 78 Fed. Reg. 59,102 (Sept. 25, 2013)

mines.  JA 49.  ALJ Merck relied not on the statute, but on 20 C.F.R. § 718.305(a)

(1980)[5], and prior decisions[6] that required a miner to proffer sufficient evidence of

dust exposure in his work environment to show substantially similar conditions to

underground mines.  JA 47.

To qualify for the 15-year presumption, there is no issue that it is the

benefits claimant that bears the initial burden of proof.  *See* 30 U.S.C. § 921(c)(4);

*Kephart v. Director, OWCP*, 8 Black Lung Rep. 1-185, 186 (1985) (Claimant bears

---

[5]  The prior regulation provides:

> (a) If a miner was employed for fifteen years or more in one or more
> underground coal mines, and if there is a chest X-ray submitted in
> connection with such miner's or his or her survivor's claim and it is
> interpreted as negative with respect to the requirements of § 718.304, and if
> other evidence demonstrates the existence of a totally disabling respiratory
> or pulmonary impairment, then there shall be a rebuttable presumption that
> such miner is totally disabled due to pneumoconiosis, that such miner's death
> was due to pneumoconiosis, or that at the time of death such miner was
> totally disabled by pneumoconiosis. In the case of a living miner's claim, a
> spouse's affidavit or testimony may not be used by itself to establish the
> applicability of the presumption. The Secretary shall not apply all or a
> portion of the requirement of this paragraph that the miner work in an
> underground mine where it is determined that conditions of the miner's
> employment in a coal mine were substantially similar to conditions in an
> underground mine. The presumption may be rebutted only by establishing
> that the miner does not, or did not have pneumoconiosis, or that his or her
> respiratory or pulmonary impairment did not arise out of, or in connection
> with, employment in a coal mine.

[6]  *Prater v. Blevins Branch Resources, Inc.*, BRB Nos. 10-0667-BLA and 10-
0668-BLA (Aug. 26, 2011); *Freeman United Coal Mining Co. v. Summers*, 272
F.3d 473, 479 (7th Cir. 2001); *Director, OWCP v. Midland Coal Co.* [*Leachman*],
855 F.2d 509, 512 (7th Cir. 1988).

burden of proof to establish years of coal mine employment); *Director, OWCP v. Midland Coal Co.*[*Leachman*], 855 F.2d at 512; *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994) (proponent of order has burden of proof). The Board has explained that a claimant must demonstrate he was "employed for 15 years or more in underground coal mines" or that his employment at a surface mine was "substantially similar to conditions in an underground mine." *Kephart v. Director, OWCP*, 8 BLR at 1-186. Although lay testimony may be used to establish the length of employment, employment determinations must be supported by substantial evidence. *Id.*

Here, the Board affirmed ALJ Merck's conclusions, holding that the benefits claimant does not need to present evidence of actual condition in an underground mine, but only show that he was exposed to sufficient coal mine dust during aboveground employment. JA 78. "Sufficient" exposure relates to the miner's personal exposure to coal dust and not to the level or extent of dust environment in an underground mine generally. *Id.* Based on Mr. Sterling's uncontradicted testimony about his dust exposure, the Board ruled the ALJ's finding the claimant established at least 15 years of coal mine employment working in an environment substantially similar to underground mine conditions was established and was sufficient to invoke the 15-year presumption. *Id.*

17

ALJ Merck relied on a passage from *Leachman* for the belief it was up to the Administrative Law Judge "to compare the surface mining conditions established by the evidence to conditions known to prevail in underground mines." JA 47. The ALJ and the Board err in failing to enforce the language of the statute that the Secretary (or his designee, the ALJ) must find the miner has established aboveground conditions are substantially similar to those in underground mines to qualify for consideration of the 15-year presumption. Work in some dusty conditions fails to fulfill the statute's requirement.

ALJ Merck provided no discussion how or why he believed the conditions of dust exposure or Mr. Sterling's description of his clothes ("dirty from dust, grease, and oil") were typical of testimony by underground coal miners who similarly complain about being exposed to dust while in mines and having sufficient dust on their clothes when they return home from work. The ALJ's subjective, unexplained, and bare conclusion cannot be used to justify a finding of "substantially similar employment" as required under 30 U.S.C. § 921(c)(4). The agency fact-finder must resolve material conflicting facts and explain these conclusions. *See Gunderson v. U.S. Dept. of Labor*, 601 F.3d 1013, 1022 (10th Cir. 2010) (discussing the application of the principles of the Administrative Procedure Act ("APA") that require a clear and satisfactory explanation of the

18

basis on which it rests, 5 U.S.C. § 557(c)(3)(A)).  The ALJ essentially provides a presumption of "substantially similar" conditions based on dust exposure.

The finding that Mr. Sterling's testimony was "typical" with testimony by underground coal miners is unable to be meaningfully reviewed.  The fact-finder does not explain what underground miners testified about.  The ALJ fails to explain how dirty clothes with dust, grease, or oil is "substantially similar" to the conditions in underground mining.  The ALJ provides no basis for this Court to understand the ALJ's expertise or knowledge of the industry and its working conditions that support the ultimate finding of substantially similar conditions to those of an underground mine.  As the Tenth Circuit explained in *Gunderson*, this type of decision fails to comply with the APA.

The ALJ provides Mr. Sterling with a double presumption.  Premised on a claim of dusty work, it is presumed the conditions were comparable to underground mining conditions.  Second, his disability is presumed to be due to pneumoconiosis.  Neither the statute nor regulation affords such a presumption to aboveground miners.  While it may be reasonable for Congress to afford disabled underground miners with 15 years exposure a presumption of disability due to pneumoconiosis, there is no basis to presume aboveground workers have like exposures.

In reviewing an agency decision, the reviewing tribunal must understand why the finder of fact made certain findings.  The ultimate question is not just exposure to dust.  Such an inquiry as to whether aboveground mining is dusty is so arbitrary and capricious that it is not able to be defined and fails to pass muster under the Administrative Procedure Act.  The Seventh Circuit rejected a similar suggestion, explaining:

> **This is not to say, as the claimant asserted at oral argument, that a miner can prove similarity simply by showing that he was in or around a coal mine for at least 15 years, without any further discussion of his employment conditions.  Such a scintilla of evidence would not discharge the claimant's burden of proof.**  Yet on this record, we readily conclude that the ALJ's invocation of the presumption was proper.  We find no merit to the coal company's claim that Summers simply made conclusory assertions such as, "The rooms were very dusty."  **To the contrary, we believe that Summers clearly delineated, in objective terms, the awful conditions on the surface of the mine.**  As we noted in Part II, **Summers clearly and most vividly described how the tasks he performed in the repair shops, hoist rooms, and preparation plants resulted in dust exposure.  He described how the wind and the exhaust fans aggravated that exposure, and he discussed the extent of that exposure.  This unrebutted testimony, on its own terms, would have been sufficient for the ALJ, with his expertise and knowledge of the industry, to compare Summers' working conditions to those prevalent in underground mines.**  *See Blakley*, 54 F.3d at 1319.  Furthermore, we note that Summers gave additional, convincing, and undisputed testimony that his job conditions above and below ground were "pretty much the same."  The ALJ was bound to find similarity after receiving such testimony, for one cannot

rationally ignore credible, uncontested evidence. *See Peabody Coal
Co. v. Lowis*, 708 F.2d 266, 276 (7th Cir.1983).

*Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 480 (7th Cir. 2001)
(emphasis added).

Unlike Mr. Summers, there was nil to suggest that Mr. Sterling's work
above ground was comparable to conditions below ground or that the conditions he
worked in were "awful." Mr. Sterling worked in aboveground or surface mines in
various capacities, operating dozers and driving trucks. He worked in enclosed
cabs. Weather would affect the amount of dust. He was dirty after work and
described the conditions as "very dusty." Dr. Knight was asked questions about
the miner's employment and ultimately explained, as quoted by ALJ Merck, that
"it was hard to say" whether the exposure was more or less than miners who would
labor in underground closed mines. Dr. Knight simply did not know. JA 48.

Antidotal observations by a fact-finder who may, or may not, have been in
actual underground coal mines is not rational decision-making, for it is an
unreviewable and completely subjective finding. Asking only the question "was
there dust?" presents such an arbitrary standard not in keeping with the
Congressional directive in the statute. Section 921(c)(4) provides the Secretary
shall determine if conditions were substantially similar.

The Director has relied on resources published by NIOSH in changing the
definition of pneumoconiosis in 2000. 65 Fed. Reg. at 79,939 (Dec. 20, 2000)

(National Institute for Occupational Safety and Health, *Criteria for a Recommended Standard, Occupational Exposure to Respirable Coal Mine Dust* (1995) (Criteria Document).  Elsewhere in the Criteria Document it describes medical studies that indicate a much lower rate of pneumoconiosis in surface coal miners and that pneumoconiosis was found in certain surface miners who worked as drill operators or driller helpers.  Criteria Document, § 4.2.4.1 at 60.  Duration of employment of United Kingdom surface miners, while related to radiographic pneumoconiosis, was not found to be associated with chronic bronchitis or measures of lung function ($FEV_1$, FVC, or $FEV_1$/FVC).  *Id.* at § 4.2.4.4 at 62.  The inquiry into dustiness alone is certainly not justified by evidence the Director relied on in establishing the definition of legal pneumoconiosis.

Based on the testimony by Dr. Knight[7] and Mr. Sterling, ALJ Merck finds it establishes the claimant was working in surface mine employment, exposed to a heavy amount of dust, and his description of clothes when he returned home from work is typical testimony by underground miners who complained about be exposed to dust and having dust on their clothes when they returned from work. *Id.*  This finding is arbitrary and capricious.  The ALJ, as a lay trier-of-fact, has not been supplied with sufficient information to meaningfully understand dust

---

[7]  The Board fails to address the equivocal testimony by Dr. Knight.

conditions in underground coal mines much less make an equivalency determination as to whether Mr. Sterling's work as an aboveground miner encountered conditions similar to that in underground coal mines.

Despite the passage of the ACA in March 2010, DOL failed to implement the provisions of 30 U.S.C. § 921(c)(4) via regulations, denying parties and the agency the ability to make a meaningful record at the 2011 hearing to consider the question of "substantially similar" conditions.[8] Without notice of what factors are to be considered, due process is denied as the hearing held is not meaningful as the parties did not know what to prove. In any event, dirt on clothes at the end of a shift at an aboveground mine simply is not equivalent to substantially similar airborne coal mine dust exposure in an underground coal mine. The ALJ's analogy that underground coal miners have dirt on their clothes and that aboveground coal miners complain of the same, means that dust exposure is substantially similar is unfounded, arbitrary and capricious, and cannot be sustained as a rational finding of fact. Moreover, the ALJ's reliance on Dr. Knight, who conceded he did not know what the conditions were, voids the reliability of the ALJ's fact finding. Reliance on Dr. Knight's uncertain statements is arbitrary, vague, and capricious.

---

[8] The Department finally promulgated regulations on September 25, 2013. 78 Fed. Reg. at 59,102.

The facts of this case simply fail to substantiate that Mr. Sterling's employment was substantially similar to that of underground coal mines. The decision is flawed as the standard used is not objective and virtually eliminates the Congressional directive that the 15-year presumption can be invoked only when years of aboveground work are in conditions substantially similar to underground coal mine work. The finding should be vacated and reversed or remanded for reconsideration.

### 2. The ALJ's consideration of the medical evidence is not supported by substantial evidence.

#### a. Chest x-ray evidence of clinical pneumoconiosis.

ALJ Merck considers each x-ray taken with black lung examinations individually and concludes that the 2006 chest x-ray was inconclusive for the presence of pneumoconiosis, that the 2007 chest x-ray was positive for pneumoconiosis, and the 2011 chest x-ray was negative for pneumoconiosis. JA 52. Although there are multiple chest x-rays in the treatment records, although none contain a diagnosis of pneumoconiosis, they were awarded little probative weight as the ALJ could not determine whether the x-rays were taken for the purpose of diagnosing clinical pneumoconiosis. JA 52. From this, he rules the x-ray evidence as a whole is inconclusive and fails to rebut the presumption of clinical pneumoconiosis.

The ALJ's finding concerning the 2007 chest x-ray is unexplained.  He rules that Dr. Fox's interpretations are inferior to those of Dr. Ahmed.  Both physicians are NIOSH B-readers, Dr. Ahmed is a board-certified radiologist and Dr. Fox is a diagnostic radiologist and is board-certified by the American Board of Nuclear Medicine.  DE 12.  Dr. Fox is also "dually" certified, and "dual" certification the only basis the ALJ gives to credit Dr. Ahmed.  The trier-of-fact must explain why these credentials are inferior to Dr. Ahmed's before crediting Dr. Ahmed's interpretation over the interpretation by Dr. Fox.  The dismissal of the treatment x-rays is also unexplained.  Regardless of the purpose of the x-rays, Dr. Diaz explained these did not evidence clinical pneumoconiosis.  JA 61, 383.

The Benefits Review Board rejected the contention that the ALJ had erred in his explanation to give greater weight to the x-ray interpretation by Dr. Ahmed because he is a board-certified radiologist.  JA 81.  The competing reading by Dr. Fox, who is board-certified in nuclear medicine , although not board-certified in radiology, should have been considered by the Administrative Law Judge and, consistent with 718.202(a)(1)'s requirement consideration shall be given to the radiological qualifications for the physicians interpreting the x-rays.  There is no explanation why a board-certified radiologist interpretation is more qualified than a board-certified nuclear medicine specialist.  Moreover, both readers are certified

by NIOSH as B-readers and are presumed to be equally well-qualified by NIOSH. The finding demands more explanation, which was not provided.

Finding one x-ray positive for pneumoconiosis, one x-ray inconclusive, and the most recent chest x-ray (by over 4 years) negative for pneumoconiosis, the ALJ rules that the operator failed to rebut the presumption that the claimant suffers from clinical pneumoconiosis.  JA 52.  This finding is both irrational and poorly explained.  The trier-of-fact has not provided a basis for the parties, must less this tribunal, to understand why this evidence does not show Mr. Sterling is without radiographic changes of clinical pneumoconiosis.

The Board rejected the "later evidence" argument suggesting it was error for the ALJ to fail to explain why the most recent x-ray did not deserve greater weight. The Board held that the Sixth Circuit "has held that the 'later evidence' rule applies only when newer evidence demonstrates worsening of a miner's condition consistent with the existence of pneumoconiosis."  JA 81.  To reach this conclusion, the Board relied on two cases, *Woodward v. Director, OWCP*, 991 F.2d 314, 321 (6th Cir. 1993) and *Crace v. Kentland-Elkhorn Coal Corp.*,[9] 109 F.3d 1163 (6th Cir. 1997).  *Id.*  The Board's reliance on *Woodward* is

_____

[9]  In *Crace*, the Sixth Circuit affirmed the finding of no pneumoconiosis based in part on the ALJ's reliance on the negative, most recent, x-ray evidence.  *Crace*, 109 F.3d at 1167.

inappropriate. On page 321 of *Woodward*, neither does the term "recent" nor the proposition of law[10] which the Board suggests *Woodward* stands for appear. Rather on page 321, the *Woodward* court emphasized that consideration of merely quantitative differences, without an attendant qualitative evaluation of x-rays and their readers, is legal error. 991 F.2d at 321 (citing *Fife v. Director, OWCP*, 888 F.2d 365, 368 (6th Cir. 1989)).

In *Woodward*, the Sixth Circuit explained the ALJ's approach, commonly referred to as the "later evidence" rule, was used to credit more recent positive study results over earlier negative results, in light of the known progressive nature of pneumoconiosis. In *Conn v. White Deer Coal Co.*, 862 F.2d 591 (6th Cir. 1988), this Court was faced with contradictory x-ray evidence. The *Woodward* court explained that the Sixth Circuit affirmed the ALJ's denial of benefits in *Conn* stating:

> [T]he ALJ considered a number of x-ray readings, and gave more weight to those by "B" readers, the majority of which were negative, and to interpretations of most recent x-rays, both of which were negative. He also credited the findings of Dr. Wright and Dr. Cornish, both examining physicians, that Conn did not have pneumoconiosis. The ALJ's method of evaluating the

---

[10] The Board suggests *Woodward* stands for the later evidence rule applies only when newer evidence demonstrates worsening of a miner's condition consistent with the existence of pneumoconiosis.

> x-ray evidence for § 727.203(b)(4) rebuttal was upheld in *Orange v. Island Creek* Coal Co., 786 F.2d 724 (6th Cir. 1986). Further, the ALJ's method of weighing evidence is supported by our reading of *Mullins*.

*Id.* at 597. In *Orange v. Island Creek Coal Co.*, 786 F.2d 724 (6th Cir. 1986), this Court affirmed an ALJ's denial of black lung benefits. As in this case, the ALJ was presented with earlier positive readings and later negative readings. The ALJ evaluated all of the evidence and resolved the conflict, however, by differentiating between the qualifications of the x-ray readers and noting the progressive nature of the disease.

In this case, the ALJ simply misapplied the "later evidence" principle. The ALJ did not weigh the results of the earlier against the later x-rays, as argued by Straight Creek. The ALJ explicitly stated that he was limiting his consideration to the latter five x-rays and proceeded to weigh the results of those x-ray interpretations. It was within this limited scope of reference that the ALJ found that the x-ray interpretations were overwhelmingly negative. Moreover, the positive results from the first three x-rays were not reconciled with the negative interpretations of the last five x-rays. The ALJ's analysis clearly runs counter to our decision in *Conn v. White Deer Coal Co.* and the Fourth Circuit's rationale in *Adkins*. Pneumoconiosis is a progressive and degenerative disease. The subsequent negative x-ray readings do not illustrate the expected deterioration in the miner's condition, but rather an improvement in his physical condition, which is inconsistent with the normal course of the disease. Thus, a disharmony in the x-ray evidence exists, and the ALJ must specifically resolve that conflict. Accordingly, the ALJ misapplied the later evidence rule and erred as a matter of law.

*Woodward,* 991 F.2d at 320. The Board's rule as suggested from *Woodward* is the opposite of what the Court held. The ALJ misapplied the later evidence principle

by not weighing the results of the earlier against the later x-rays.  The analysis the

ALJ used in *Woodward* (only considering the recent x-rays) failed to

acknowledged pneumoconiosis as a progressive and degenerative disease.  The

subsequent negative x-ray readings do not illustrate the expected deterioration in

the miner's condition, but rather an improvement in his physical condition, which

is inconsistent with the normal course of the disease.  Given this disharmony in the

x-ray evidence, the ALJ must specifically resolve the conflict.  Here ALJ Merck

failed to resolve that conflict in a rational matter.

Moreover, the Board confuses the "later evidence" principle by ruling that

the Sixth Circuit has held as a matter of law that the principle applies only when

newer evidence demonstrates the worsening of a miner's condition.  The ALJ's

determination of the x-ray must be returned so that the ALJ can comply with the

Act's requirement that all relevant evidence must be weighed together to determine

whether the claimant suffers from the disease.  *See* 30 U.S.C. 923(b); *Dixie Fuel

Co., LLC v. Director, OWCP*, 700 F.3d 878, 881 (6th Cir. 2012)(discussing the

weighing of evidence on the existence of pneumoconiosis under 20 C.F.R.

§ 718.202(a)).

**b.     Consideration of the physician opinions regarding clinical or legal pneumoconiosis and disability due to pneumoconiosis.**

**i.     Dr. Rosenberg's opinion.**

The ALJ discredited Dr. Rosenberg believing his opinion was contrary to that offered by the Department of Labor and the preamble to the regulations.  This is error.  *See Gunderson*.  Examination of Dr. Rosenberg's opinion does not support such a finding.

Dr. Rosenberg has exquisite qualifications to offer an opinion in this case.  He has board certifications in internal medicine, pulmonary disease, and occupational medicine.  In addition to being trained as a physician, Dr. Rosenberg has a master's degree in public health from the University of Wisconsin.  He is also a NIOSH B-reader of chest radiographs.  In addition, he has worked at the National Institute of Health in Bethesda, Maryland where he spent three years doing research primarily in the area of interstitial lung disease, studying the pathogenesis of fibrosis of the lungs.  JA 317.

Dr. Rosenberg evaluated Mr. Sterling in May 2011.  JA 290.  In addition to taking an oral history, he had a longitudinal history of treatment records which allowed him to fully understand Mr. Sterling's presentation over the course of several years.  *Id.*  Mr. Sterling last worked as a coal miner in 1999 and had significant exposure to dust as a miner.  JA 321.  Ventilatory studies performed in

1998 showed that he had very severe airways obstruction at the time he left coal mining. JA 322. His airway obstruction has remained the same up to the most recent studies evaluating airways function performed in 2011. *Id.*

Mr. Sterling is using a series of bronchodilators that are designed to improve airflow obstruction. These medicines are not useful for treatment of clinical or legal pneumoconiosis, but approved for the treatment of hyperactive airways disease, asthma, or COPD. JA 324. Mr. Sterling's blood gas studies show carbon dioxide retention, which is a sequelae frequently associated with severe smoking-induced COPD, a ventilation perfusion mismatch causing the lungs to be unable to remove carbon dioxide. JA 326. Mr. Sterling, who weighed 289 pounds at the time of a 2007 evaluation, was obese. Obesity further aggravated his poor ventilation, adding an extra burden to mechanical problems of ventilation and raised the carbon dioxide levels in the blood gases. Indeed, the obesity which causes body mass to overlay the lungs, likely explains the abnormalities that Dr. Ahmed appreciated in the lower lung zones on his chest x-ray interpretation. *Id.* The ALJ fails to resolve this conflicting evidence in conflict with the APA. 5 U.S.C. § 557(c)(3)(A); *Gunderson*. The ALJ must resolve the scientific conflict over the x-rays and as Drs. Diaz, Forrestal, and Knight failed to explain why obesity without the cause of poor ventilation and x-ray changes.

The treatment records revealed Mr. Sterling's cough and sputum production dissipated and eventually ceased when he finally stopped smoking.  JA 330. Dr. Rosenberg explained why the injury to Mr. Sterling's lungs was consistent with particles that were being inhaled and why cigarette smoking, made up of vapors and gases, explain the severe obstructive impairment which had occurred.

On cross-examination, Dr. Rosenberg addressed DOL's studies cited in the preamble to the 2001 regulatory changes and explained that the articles relied on the Department of Labor also supported his conclusions in Mr. Sterling's case. The ALJ fails to explain his contrary finding.  Dr. Rosenberg was able to separate the effects of cigarette smoking from coal dust exposure with a reasonable degree of medical certainty. This is what the Department of Labor envisioned, as explained in the preamble to the regulatory changes:

> The Department emphasized that the proposed revision was designed to make clear that obstructive lung disease may fall within the definition of pneumoconiosis, but only if it is shown to have arisen from coal mine employment; thus, the proposed definition would not alter the former regulations' (20 CFR 718.202(a)(4), 718.203 (1999)) requirement that each miner bear the burden of proving that his lung disease arose out of his coal mine employment.

Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79,920, 79,937 (Dec. 20, 2000) (codified at 20 C.F.R. § Parts 718, 722, 725, 726, and 727).  Additionally, "the language of the proposed regulation makes plain that only 'obstructive pulmonary disease arising out of coal

32

mine employment' falls within the definition of pneumoconiosis." *Id.* at 79,938.

"Whether a particular miner's disability is due to his coal mine employment or

smoking habit must be resolved on a claim-by-claim basis under the criteria set

forth at § 718.204." *Id.* at 79,941.

Although the legal definition of coal workers' pneumoconiosis is broad, it is

not so broad as to encompass any obstructive disease occurring in coal miners or

former coal miners. *See National Mining Ass'n. v. Department of Labor*, 292 F.3d

849, 862-63 (D.C. Cir. 2002). A history of coal dust exposure, by itself, does not

conclusively confirm a claimant has pneumoconiosis or is disabled by that

condition. *See Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 533 (4th Cir. 1998);

*see also Sahara Coal Co. v. Fitts*, 39 F.3d 781, 783 (7th Cir.1994) ("Occupational

exposure is not evidence of pneumoconiosis . . . but merely a reason to expect that

evidence might be found."). While obstructive airways diseases can be related to

coal dust exposure, it is also a disease of the general population. *Andersen v.*

*Director, OWCP*, 455 F.3d 1102, 1105 (10th Cir. 2006).

The regulatory definition of pneumoconiosis did not alter the requirement

that a miner prove[11] a causal relationship between coal mine employment and any

obstructive lung disease. *NMA*, 292 F.3d at 862-63; *see also* Regulations

---

[11]  In this matter, the burden of rebuttal proof is on the operator.

33

Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended,

65 Fed. Reg. 79,920, 79937–38 (Dec. 20, 2000) (codified at 20 C.F.R. § Parts 718,

722, 725, 726, and 727).  As the D.C. Circuit explained:

> NMA also alleges that the preamble to the regulations impermissibly suggests that an adjudicator may ignore a medical report if the reporting doctor concludes that a miner's obstructive lung disease was caused by smoking, rather than mining.  This objection is entirely meritless.  The regulation's plain text in no way indicates that medical reports will be excluded if they conclude that a particular miner's obstructive disease was caused by smoking, rather than mining.  Indeed, the preamble itself states that the revised definition does not alter the requirement that individual miners must demonstrate that their obstructive lung disease arose out of their work in the mines.  *See* 65 Fed. Reg. at 79,938.

*NMA*, 292 F.3d at 862-63.  ALJ Merck has utilized the preamble to discredit and

therefore ignore Dr. Rosenberg's report.

The United States Court of Appeals for the Tenth Circuit has also addressed

the requisite proof of legal pneumoconiosis albeit when the burden is placed on the

benefits claimant:

> Under the plain language of 20 C.F.R. § 718.201(a)(2), proving that one suffers from an "obstructive pulmonary disease" does not prove that one suffers from legal pneumoconiosis unless one is able to show one's obstructive pulmonary disease arose out of coal mine employment.  *See Bradberry v. Director, OWCP*, 117 F.3d 1361, 1368 (11th Cir. 1997); *Richardson v. Director, OWCP*, 94 F.3d 164, 166 n.2 (4th Cir. 1996). . . . as noted, legal pneumoconiosis consists of "any chronic lung disease[,] including an "obstructive pulmonary disease arising out of coal mine employment."    20 C.F.R.

> § 718.201(a)(2)(emphasis added). Only after a claimant is able to prove that his obstructive pulmonary disease is "significantly related to, or substantially aggravated by, dust exposure and coal mine employment" does a claimant prove he suffers from legal pneumoconiosis. *See* § 718.201(b); *Doris Coal Company v. Director, OWCP,* 938 F.2d 492, 496 (4th Cir. 1991).

*Andersen,* 455 F.3d at 1105. Thus, the unambiguous regulatory language and the case law make clear that there is no basis to presume all COPD is legal pneumoconiosis.

Rather than consider Dr. Rosenberg's explanations, the ALJ mechanically concluded that Dr. Rosenberg's opinion was contrary to the position of the Department of Labor in the Federal Register. There is neither support for this finding in the preamble nor has the Director stated a position in this case that Dr. Rosenberg's opinion is contrary to the Director's comments in the preamble to the regulations. The ALJ's citation to prior cases where another ALJ found Dr. Rosenberg's opinion unpersuasive or contrary to a portion of the preamble, does not substantiate such a finding in this case. JA 67–8. Indeed, the portion of the preamble cited by the ALJ indicates that COPD may be detected from decrements in certain measures of lung function especially the $FEV_1$ in the ratio of the $FEV_1$ to FVC. The preamble does not state that a physician cannot differentiate the etiology of the COPD based on the patterns or decrements in these values.

The ALJ's irrational jump that Dr. Rosenberg's opinion is hostile or inconsistent with an explanatory statement in the preamble, a statement that is neither codified in the regulations nor arises from the BLBA, cannot be substantiated.  Dr. Rosenberg's rational scientific explanation as to why the totality of the information presented in this case shows that Mr. Sterling's disabling lung disease arose from his years of cigarette smoking is not inconsistent with the DOL's standards.  Dr. Rosenberg carefully discussed the substantial body of scientific evidence documenting the causal relationship between COPD and occupational exposure, he integrated the medical evidence with the miner's medical records to conclude that coal dust exposure did not contribute to Mr. Sterling's obstruction, and persuasively explained why Mr. Sterling's aboveground exposure to coal mine dust did not contribute to the disabling impairment which was typical and characteristic of that caused by smoking alone.

### ii.    Dr. Grodner's opinion.

Despite acknowledging: 1) Dr. Grodner was board-certified in internal medical and the subspecialty of pulmonary diseases; 2) Dr. Grodner rendered a medical report based on a complete work-up including history, physical examination, and diagnostic testing; 3) Dr. Grodner diagnosed the claimant with severe chronic obstructive airways disease finding no evidence of coal workers' pneumoconiosis as the chest x-ray that was taken at the time and interpreted by

36

B-reader, Dr. Fox; and 4) Dr. Grodner assessed severe airways disease which was caused by a combination of chronic bronchitis and pulmonary emphysema, Dr. Grodner's opinion was found unpersuasive.  JA 58.

Dr. Grodner diagnosed severe chronic obstructive airway disease and no evidence of pneumoconiosis based on the chest x-ray that showed neither parenchymal nor pleural changes.  Dr. Grodner states the severe chronic obstructive airway disease is due to Mr. Sterling's past history of cigarette smoking and genetic factors.  *Id.*  As Mr. Sterling does not have evidence of coal workers' pneumoconiosis, none of his impairment can be attributed to pneumoconiosis.  *Id.*  ALJ Merck rules "It is clear that Dr. Grodner is conflating the concepts of clinical and legal pneumoconiosis."  JA 58–9.  The opinion is believed to be inconsistent with the DOL determination that COPD can be contributed to coal dust exposure absent clinical (x-ray changes) pneumoconiosis.  JA 59.  Substantial evidence does not support this clear finding.  ALJ Merck errs in concluding that the Board permits discrediting the physician's opinion amounting to no more than an x-ray reading restatement.

Clinical pneumoconiosis is defined as those diseases recognized by the medical community as pneumoconiosis characterized by the permanent deposition of substantial amounts of particular matter in the lungs and the fibrotic reaction of the lung tissue to that deposition.  20 C.F.R. § 718.201(a)(1).  Dr. Grodner relied

upon the chest x-ray to exclude clinical pneumoconiosis. There is no basis in the regulations or in the case law that would find Dr. Grodner's opinion unpersuasive to exclude the presence of clinical pneumoconiosis based on a chest x-ray. Indeed, the opinion of Dr. Diaz, claimant's expert, stated that the radiographic evidence demonstrated COPD rather than clinical pneumoconiosis, consistent with Dr. Grodner's opinion. JA 61. The ALJ errs in discrediting Dr. Grodner's opinion for failing to provide a reasonable basis to exclude the existence of clinical pneumoconiosis.

Likewise, Dr. Grodner's opinion regarding the etiology of the chronic obstructive airways disease is discredited. Rather than explain why Dr. Grodner's opinion (that the disease was not due to coal dust and instead arose out of a combination of cigarette smoke-induced chronic bronchitis and pulmonary emphysema) could not be credited, the ALJ applied a rote methodology to disregard Dr. Grodner's opinion believing that COPD can be attributed to dust exposure based on statements in the preamble to the revised regulations. This is an irrational, arbitrary, and capricious application of comments made in the preamble in evaluating the particular physician's opinion. ALJ decisions must resolve the scientific dispute and be well explained. *See Gunderson v. U.S. Dep't. of Labor*, 601 F.3d 1013 (10th Cir. 2010).

It is evident the ALJ has failed to give a valid reason for discrediting Dr. Grodner's opinion on the cause of the COPD.  The Director in the preamble agrees COPD can be caused by factors other than pneumoconiosis or coal dust. The mere conclusion this man's COPD was not due to coal dust exposure does not make Dr. Grodner's opinion inconsistent with the preamble.  Dr. Grodner states the airway disease is due to cigarette smoking and genetic factors.  Otherwise, the ALJ's conclusion—that COPD is always legal pneumoconiosis—would mean there is no reason to weigh medical opinions or further analyze a case.  Neither the law nor the intent of the regulations permits such a finding or presumption.  Such a finding is arbitrary and capricious and mandates the decision be vacated.

### iii.    Dr. Diaz' opinion.

The ALJ credits Dr. Diaz's opinion on clinical pneumoconiosis little weight, but on legal pneumoconiosis "full probative weight."  JA 62.  The finding that there was not clinical pneumoconiosis is not justified.

Dr. Diaz stated the radiographic evidence shows COPD not clinical pneumoconiosis.  JA 61.  The ALJ gives Dr. Diaz "little probative weight" as it is equivocal or vague.  JA 61-2.  Substantial evidence fails to show Dr. Diaz' statement to be either equivocal or vague.

The finding that Dr. Diaz persuasively diagnoses legal pneumoconiosis is also not justified.  This is made without fully resolving scientific controversy

between Dr. Diaz and Dr. Rosenberg. This is error. *See Gunderson*. As the ALJ explains, Dr. Diaz was not aware of elevated lung volumes, diffusion abnormalities, or carbon dioxide retention, all things afflicting Mr. Sterling, as ever having been reported to be caused by coal dust exposure. Dr. Diaz doubted the claimant would be totally disabled if he had never smoked cigarettes. JA 61, 380-81, 388.

Dr. Diaz fails to explain why his opinion can be persuasive when he is unaware whether severe COPD such as Mr. Sterling presents has ever been reported in coal miners without radiographic evidence of pneumoconiosis. JA 379. While severe obstructions in a lung volume are associated with cigarette smoking, he agreed it was not reported in coal miners without radiographic evidence of pneumoconiosis. Diffusing capacity abnormalities were consistent with those caused by smoking, but to Dr. Diaz's knowledge, never caused by coal dust exposure. $CO_2$ retention was consistent with cigarette smoke-induced COPD but not ever reported in coal miners. *Id*. While Dr. Diaz agreed Mr. Sterling did not have any interstitial pattern on x-rays associated with coal dust exposure, he believed the airway impairment was related in some degree to coal dust exposure but that it was a small in magnitude agreeing that Mr. Sterling would not be totally disabled had he never smoked cigarettes.

Dr. Diaz's opinion cannot stand for the proposition that a significant portion of the disabling disease is related to coal dust exposure and is, as a matter of law in this case arising out of the Sixth Circuit, insufficient to support entitlement under § 718.204. *See Island Creek Coal Co. v. Calloway*, Sixth Cir. No. 09-4598 (6th Cir. Feb. 7, 2012) (unpublished) (*attached*). As such, his opinion supports, rather than detracts from the operator's proof. The ALJ's findings that Dr. Diaz's opinion proves either legal pneumoconiosis or total disability causation is irrational, not consistent with law, and cannot be affirmed.

### iv.    Other physician opinions.

In his decision, ALJ Merck discusses Dr. Forrestal, a treating physician, believing his opinion to be well-documented and persuasive. Yet, Dr. Forrestal's opinion fails to explain why he was able to exclude cigarette smoking as the lone cause of Mr. Sterling's disabling COPD. The ALJ has inconsistently weighed the physician opinions, having discredited Drs. Grodner and Rosenberg for not being able to explain why coal dust exposure played no role, yet opts to credit Dr. Forrestal's opinion when he fails to explain why cigarette smoking was not the cause of the miner's disability.

The ALJ discusses the opinions and records of Dr. Frank Branditz, finding Dr. Branditz failed to give any reasoned rationale for the conclusion that cigarette smoking was the sole cause of the claimant's COPD. The ALJ's resolution of the

evidence is incomplete and fails to consider all the relevant information.  For

example, as pointed out by the operator in its closing argument, Dr. Forrestal's

treatment records show diagnosis of bronchitis, asthma, chronic obstructive

pulmonary disease, and sinus allergies but does not diagnose coal workers'

pneumoconiosis.  EE 1.  Dr. Carl G. Schowengerdt's treatment reflects

Mr. Sterling was smoking a package of cigarettes per day down from his previous

three packs, and had advanced emphysema and could expect death within a few

years if he did not cease cigarette smoking.  The records from Drs. Branditz,

Forrestal, and VanGilder note COPD due to long term cigarette smoking or asthma

but do not note a diagnosis of coal workers' pneumoconiosis or a coal mine dust-

induced COPD.  The ALJ has failed to adequately consider all the relevant

evidence meaning the decision must be vacated and returned for further

consideration.

As the ALJ's findings of legal pneumoconiosis and clinical pneumoconiosis

are flawed, the ALJ's findings concerning whether disability arose out of coal dust

exposure are also flawed.  Even if the ALJ's determinations concerning clinical

and legal pneumoconiosis could be affirmed as being based on substantial evidence

after a consideration and resolution of all the conflicting evidence, the reliance on

Drs. Forrestal, Knight, and Diaz is inappropriate.  These physicians, particularly

Dr. Diaz, concede that Mr. Sterling would not have been disabled had he not

smoked cigarettes.  Thus, these opinions, in concert with the opinions of

Drs. Grodner and Rosenberg supported by the treatment records, show

Mr. Sterling's disabling disease was caused by long-term cigarette smoking.  As

the Supreme Court enunciated in 1976, when evidence shows pneumoconiosis is

mild, benefits are not to be awarded.  *See Usery v. Turner Elkhorn Coal Co.*,

428 U.S. 1, 34 (1976).  The ALJ's errors require remand for rebuttal of the 15-year

presumption to be reconsidered.

> **3.     The ALJ's determination that Mr. Sterling smoked on
> average one and one-half packages of cigarettes per day is
> irrational, arbitrary, and capricious.**

Acknowledging that Mr. Sterling's cigarette smoking history is somewhat

contradictory, ALJ Merck found Mr. Sterling smoked cigarettes from November

1966 to February 2005, or approximately 38 years.  JA 43.  While the evidence

regarding the amount smoked has varied, a preponderance was found to

established he averaged one and one-half packages per day, leading the ALJ to

conclude a preponderance of the evidence establishes a smoking history of at least

57 pack-years of cigarette smoking.  *Id.*

The Board considered the challenge to the ALJ's finding and the contention

that the ALJ violated the Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A),

as incorporated into the BLBA by 5 U.S.C. § 554(c)(2), 33 U.S.C. § 919(d), and

30 U.S.C. § 932(a), by failing to adequately explain the finding that Mr. Sterling

averaged one and one-half packages of cigarettes smoked per day.  JA 79.  While the Board agreed with Central Ohio that the ALJ did not fully explain how to resolve the conflicts in the evidence as to the extent of Mr. Sterling's smoking, the Board felt remand was not required under the circumstances of this case.  *Id.* Central Ohio disagrees that it was harmless error for the ALJ to resolve the smoking history in this fashion.

At the hearing, the miner offered contradictory testimony about his smoking history.  He smoked initially one package of cigarettes per day and gradually increased to one and one-half packages of cigarettes per day.  On a 12-hour shift, he would smoke more than one and one-half packages of cigarettes, sometimes three packages of cigarettes, per day.  JA 42.

Physician reports indicate the miner smoked anywhere from one to three packages of cigarettes per day.  JA 103, 176.  As summarized by the ALJ, the physicians who examined Mr. Sterling in connection with his federal black lung claim, understood a smaller history of cigarette smoking than his treating physicians.  Dr. Forrestal, and another physician, Dr. Carl G. Schowengerdt, noted that Mr. Sterling as of August 2000 was smoking one package of cigarettes per day down from his previous three packages of cigarettes per day.  JA 103.  Another treating physician, Dr. Fred K. Branditz, described Mr. Sterling to be an "extensive" cigarette smoker, having smoked two packages per day prior to a 2003

hospitalization.  JA 139.  The ALJ did not note (although included in the operator's February 7, 2012 brief at page 5) that Dr. VanGilder notes a two package a day smoking habit until 2005 and Dr. Branditz noted Mr. Sterling was still smoking in February 2007.  JA 176.  Based on this evidence, the ALJ finds the preponderance of the evidence establishes the claimant averaged about one and one-half packages of cigarettes per day from 1966 until February 2005.  This finding is irrational.

It is arbitrary and capricious for the ALJ to accept the claimant's testimony offered at the hearing when it is refuted by the treatment records which have no taint of potential bias influenced by litigation.  Admittedly, a history of cigarette smoking depends on Mr. Sterling's recollection and his veracity in telling how many packages of cigarettes he smoked and when he ceased.

The ALJ is charged to consider all the relevant evidence and reach conclusions that are reasonable and based on substantial evidence considering all the facts presented.  Rather than rely on what even Mr. Sterling's testimony shows were flawed and minimized smoking histories he presented to those physicians who examined him in connection with his federal black lung claim, it is only rational and reasonable to conclude that the miner's history as recorded by his treating physicians of having smoked two to three packages of cigarettes per day until 2007 is indeed far more reasonable and reliable history of smoking than that which he testified to at the hearing.  If not, the APA requires the ALJ explain why

45

not.  There was no reason for the claimant to minimize his smoking history to his treating physicians on several different occasions and indeed the concession he smoked three packages of cigarettes per day is confirmed by his own testimony at the hearing.

The ALJ's conclusion that he averaged one-half as much is simply not reasonable, is arbitrary and capricious, and should be vacated for fact-finding based on the record.  As this influences the ALJ's resolution of the physician opinions, the decision must be vacated as not based on substantial evidence and sufficiently explained why the fact finder opted to credit a smaller smoking habit in light of the contrary evidence.

## VI.    CONCLUSION

Central Ohio Coal Company respectfully requests that the Decision and

Order Awarding Benefits be vacated and remanded for those reasons consistent

with those as explained in this brief in support of the Petition for Review.


Respectfully submitted,

**CENTRAL OHIO COAL COMPANY,**

By Counsel.



/s/ William S. Mattingly
William S. Mattingly
W.Va. Bar No. 4699
Jackson Kelly PLLC
150 Clay Street, Suite 500
P. O. Box 619
Morgantown, WV  26507
(304) 284-4100

47

## VII.   REQUEST FOR ORAL ARGUMENT

Central Ohio Coal Company requests that this matter be set for oral argument before a panel of the United States Court of Appeals for the Sixth Circuit.  Oral argument will help to amplify an understanding of the issues.  As this claim involves detailed consideration of medical evidence, oral argument will also help facilitate an understanding of why the ALJ considered the evidence of record in a method contrary to the controlling standards of this Circuit to find that Mr. Sterling was totally disabled due to coal workers' pneumoconiosis.

# VIII.  ADDENDUM OF STATUTES, RULES, AND REGULATIONS

30 USC §921 (c)(4)

> If a miner was employed for fifteen years or more in one or more
> underground coal mines, and if there is a chest roentgenogram submitted in
> connection with such miner's, his widow's, his child's, his parent's, his
> brother's, his sister's, or his dependent's claim under this subchapter and it is
> interpreted as negative with respect to the requirements of paragraph (3) of
> this subsection, and if other evidence demonstrates the existence of a totally
> disabling respiratory or pulmonary impairment, then there shall be a
> rebuttable presumption that such miner is totally disabled due to
> pneumoconiosis, that his death was due to pneumoconiosis, or that at the
> time of his death he was totally disabled by pneumoconiosis. In the case of a
> living miner, a wife's affidavit may not be used by itself to establish the
> presumption. The Secretary shall not apply all or a portion of the
> requirement of this paragraph that the miner work in an underground mine
> where he determines that conditions of a miner's employment in a coal mine
> other than an underground mine were substantially similar to conditions in
> an underground mine. The Secretary may rebut such presumption only by
> establishing that (A) such miner does not, or did not, have pneumoconiosis,
> or that (B) his respiratory or pulmonary impairment did not arise out of, or in
> connection with, employment in a coal mine.

20 C.F.R. § 718.201

> (a) For the purpose of the Act, "pneumoconiosis" means a chronic dust
> disease of the lung and its sequelae, including respiratory and pulmonary
> impairments, arising out of coal mine employment. This definition includes
> both medical, or "clinical", pneumoconiosis and statutory, or "legal",
> pneumoconiosis.
>> (1) Clinical Pneumoconiosis. "Clinical pneumoconiosis" consists of
>> those diseases recognized by the medical community as
>> pneumoconioses, i.e., the conditions characterized by permanent

49

deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

(2) Legal Pneumoconiosis. "Legal pneumoconiosis" includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment.

20 C.F.R. § 718.305 (1980)

(a) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest X-ray submitted in connection with such miner's or his or her survivor's claim and it is interpreted as negative with respect to the requirements of § 718.304, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that such miner's death was due to pneumoconiosis, or that at the time of death such miner was totally disabled by pneumoconiosis. In the case of a living miner's claim, a spouse's affidavit or testimony may not be used by itself to establish the applicability of the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where it is determined that conditions of the miner's employment in a coal mine were substantially similar to conditions in an underground mine. The presumption may be rebutted only by establishing that the miner does not, or did not have pneumoconiosis, or that his or her respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

20 C.F.R. § 718.305 (2013)

(a) Applicability. This section applies to all claims filed after January 1, 2005, and pending on or after March 23, 2010.

(b) Invocation.

(1) The claimant may invoke the presumption by establishing that--

(i) The miner engaged in coal-mine employment for fifteen years, either in one or more underground coal mines, or in coal mines other than underground mines in conditions substantially similar to those in underground mines, or in any combination thereof; and

(ii) The miner or survivor cannot establish entitlement under § 718.304 by means of chest x-ray evidence; and

(iii) The miner has, or had at the time of his death, a totally disabling respiratory or pulmonary impairment established pursuant to § 718.204, except that § 718.204(d) does not apply.

(2) The conditions in a mine other than an underground mine will be considered "substantially similar" to those in an underground mine if the claimant demonstrates that the miner was regularly exposed to coal-mine dust while working there.

(3) In a claim involving a living miner, a miner's affidavit or testimony, or a spouse's affidavit or testimony, may not be used by itself to establish the existence of a totally disabling respiratory or pulmonary impairment.

(4) In the case of a deceased miner, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition must be considered sufficient to establish total disability due to a respiratory or pulmonary impairment if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition; however, such a determination must not be based solely upon the affidavits or testimony of any person who would be eligible for benefits (including augmented benefits) if the claim were approved.

(c) Facts presumed. Once invoked, there will be rebuttable presumption--

    (1) In a miner's claim, that the miner is totally disabled due to pneumoconiosis, or was totally disabled due to pneumoconiosis at the time of death; or

    (2) In a survivor's claim, that the miner's death was due to pneumoconiosis.

(d) Rebuttal--

    (1) Miner's claim. In a claim filed by a miner, the party opposing entitlement may rebut the presumption by--

        (i) Establishing both that the miner does not, or did not, have:

            (A) Legal pneumoconiosis as defined in § 718.201(a)(2); and

            (B) Clinical pneumoconiosis as defined in § 718.201(a)(1), arising out of coal mine employment (see § 718.203); or

        (ii) Establishing that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis as defined in § 718.201.

    (2) Survivor's claim. In a claim filed by a survivor, the party opposing entitlement may rebut the presumption by--

        (i) Establishing both that the miner did not have:

            (A) Legal pneumoconiosis as defined in § 718.201(a)(2); and

            (B) Clinical pneumoconiosis as defined in § 718.201(a)(1), arising out of coal mine employment (see § 718.203); or

        (ii) Establishing that no part of the miner's death was caused by pneumoconiosis as defined in § 718.201.

    (3) The presumption must not be considered rebutted on the basis of evidence demonstrating the existence of a totally disabling obstructive respiratory or pulmonary disease of unknown origin.

# IX.   ADDENDUM OF UNPUBLISHED CASES

*Island Creek Coal Co. v. Calloway*,
        Sixth Cir. No. 09-4598 (6th Cir. Feb. 7, 2012) (unpub.)

## X.    CERTIFICATE OF COMPLIANCE

1.    This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

 X    Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT sans serif typeface such as Arial).  Specify software name and version, typeface name, and point size below (for example), WordPerfect 8, CG Times, 14 point)

Word, Times New Roman, 14 point

___    Twelve point, monospaced typeface (such as Courier or Courier New).  Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, Courier, 12 point):

2.    Exclusive of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

____    (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief) OR

**10,635**    Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

____    Lines for Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

/s/ William S. Mattingly
Signature of filing party

Dated:  December 18, 2013

## XI.    CERTIFICATE OF SERVICE

I, William S. Mattingly, do hereby certify that I served the foregoing Brief of Petitioner, upon the following, through the CM/ECF system, this 18th day of December 2013.

**ELECTRONIC:**     Leonard Green, Clerk
United States Court of Appeals for the Sixth Circuit
540 Potter Stewart U. S. Courthouse
100 East Fifth Street
Cincinnati, OH  45202-3988

Heath Long
Pawlowski, Bilonick & Long
P. O. Box 658
Ebensburg, PA  15931-0658
*pbllaw@yahoo.com*

Helen H. Cox
U. S. Department of Labor
Office of the Solicitor
Suite N-2117
200 Constitution Avenue, N.W.
Washington, DC  20210
*cox.helen@dol.gov*
*blls-sol@dol.gov*

/s/ William S. Mattingly
Counsel for Central Ohio Coal Company

cc:   Lisa Davis
M0917471.DOCX/WSM:srs